# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal no. 2:13-cr-137-NT |
| ) | |
| KENNETH SALES, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON DEFENDANT'S MOTION
## TO DISMISS THE INDICTMENT

This case comes before the Court on Defendant Kenneth Sales's motion to dismiss the indictment against him. Def's Mot. to Dismiss (ECF No. 28). The one-count indictment, returned on July 23, 2013, charges Sales under 18 U.S.C. § 922(g)(9) with possession of a firearm by an individual convicted of a misdemeanor crime of domestic violence. Indictment (ECF No. 14). The Defendant claims that the predicate offense identified in the indictment does not qualify as a "misdemeanor crime of domestic violence" under Section 922(g)(9). He also asserts that use of this conviction as a predicate offense violates the rule of lenity and the doctrine of constitutional doubt, and violates his rights under the Second and Fifth Amendments to the United States Constitution. For the reasons that follow, the Court **DENIES** the Defendant's motion.

# BACKGROUND

A.  <u>The Underlying State Conviction</u>

On October 18, 2010, the State of Vermont filed an information charging Kenneth Sales with two counts of first degree aggravated domestic assault. Exh. 1 to Def's Mot. to Dismiss 1-2. Count one set forth a violation of Section 1043(a)(1) of Title 13 of the Vermont Statutes Annotated,[1] and count two set forth a violation of Section 1043(a)(2) of Title 13 of the Vermont Statutes Annotated.[2] On December 16, 2010, at a change of plea hearing, the State dismissed count two and amended count one to "ASSAULT-SIMPLE—MUTUAL AFFRAY." 13 V.S.A § 1023(b). Exh. 1 to Def's Mot. to Dismiss 5.

Count one, as amended, stated: "Kenneth Sales, in this Territorial Unit, in the County of Bennington, at Arlington, on or about October 17, 2010 . . . engaged in a fight or scuffle entered into by mutual consent." Exh. 2 to Gov't's Opp'n to Def.'s Mot. to Dismiss (ECF No. 31). As part of his December 16, 2010 plea colloquy, the judge explained:

> Mr. Sales, you now have an amended charge, that on or about October 17th, you recklessly caused bodily injury to a person, and that it was in a fight or scuffle entered into by mutual consent. Penalty of up to 60 days in jail or a $500 fine. The basis for this as I understand it is that you would be admitting that there was a physical altercation between you and Ms. Goddard . . . and that in the course of it you at least

---

[1]  Section 1043(a)(1) provides: "a person commits the crime of first degree aggravated domestic assault if the person: (1) attempts to cause or wilfully or recklessly causes serious bodily injury to a family or household member . . . ."

[2]  Section 1043(a)(2) provides: "a person commits the crime of first degree aggravated domestic assault if the person: . . . (2) uses, attempts to use or is armed with a deadly weapon and threatens to use the deadly weapon on a family or household member . . ."

2

> recklessly . . . caused bodily injury to her, being . . . a scratch or a sort of cut that she received. Bodily injury is any sort of injury, it doesn't have to be a broken bone or anything like that, it can be a bruise, a cut, kind of anything that hurts. . . . [R]ecklessly means you did not have to intend a particular result, but you engaged in conduct that was not what a reasonable person would do in these circumstances, and had a very high risk that the result would happen. So obviously engaging in a fight or scuffle would qualify as that. . . . [F]ight or scuffle is pretty much what you'd think it would mean. . . . [M]utual consent just means that the two of you sort of engaged in the fight or scuffle, rather than one person, uh, solely.

Sales then acknowledged that he understood the amended charge and pleaded guilty to it. Exh. 4 to Gov't's Opp'n to Def.'s Mot. to Dismiss 1.

### B. The Pending Federal Charge

Sales was charged with a violation of 18 U.S.C. §922(g)(9). The indictment alleges that on about May 6, 2013, Sales knowingly possessed a Hi-Point .45 caliber pistol and that at the time of his possession Sales had been convicted of a misdemeanor crime of domestic violence, specifically, the December 16, 2010 conviction for simple assault in violation of 13 V.S.A § 1023.

## DISCUSSION

### A. Section 922(g)(9)

Section 922(g)(9) prohibits anyone "who has been convicted in any court of a misdemeanor crime of domestic violence" from "possess[ing] in or affecting commerce, any firearm . . . ." 18 U.S.C. § 922(g)(9). Federal law defines the predicate offense for a Section 922(g)(9) violation as an offense that:

(i) is a misdemeanor under . . . State . . . law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or

3

> former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim[.]

18 U.S.C. § 921(a)(33)(A).

Congress enacted Section 922(g)(9) because it recognized that domestic violence and guns were a lethal combination and because it was concerned that the then-existing law prohibiting felons from possessing firearms did not adequately protect victims of domestic violence. The First Circuit explained:

> Since Congress concluded that the focus on felony convictions left guns in the hands of a large number of domestic abusers who were convicted of lesser crimes, often due to some combination of plea bargaining, outdated or ineffective laws that treated domestic violence as a lesser offense, and lack of cooperation from victims, it enacted the Amendment to "close th[e] dangerous loophole," *United States v. Booker*, 644 F.3d 12, 21 (1st Cir. 2011) (quoting 142 Cong. Rec. S10379 (daily ed. Sept. 12, 1996) (statement of Sen. Feinstein)) (internal quotation marks omitted), and "establish[ ] a policy of zero tolerance when it comes to guns and domestic violence," *id.* (alteration in original) (quoting 142 Cong. Rec. S8831 (daily ed. July 25, 1996) (statement of Sen. Lautenberg)) (internal quotation marks omitted).

*United States v. Armstrong*, 706 F.3d 1, 4 (1st Cir. 2013) (alterations in original).

The First Circuit has held that "crimes characterized by the application of any physical force" meet the definition of "physical force" required for the predicate misdemeanor crime of domestic violence under Section 922(g)(9). *United States v. Nason*, 269 F.3d 10, 18 (1st Cir. 2001). Although the Supreme Court in 2010 held that "physical force" means "violent force" for purposes of defining a violent felony predicate offense under the Armed Career Criminal Act, *see Johnson v. United States*, 559 U.S. 133, 140 (2010), the First Circuit has since confirmed that this does

not overrule *Nason's* interpretation of "physical force" in the Section 922(g)(9) context. *Armstrong*, 706 F.3d at 6. The First Circuit has also held that Section 922(g)(9) does not require the underlying crime to have been perpetrated with intent, but that recklessness is sufficient. *Booker*, 644 F.3d at 21.

### B. <u>Vermont's Simple Assault Statute</u>

Vermont's simple assault statute states:

> (a) A person is guilty of simple assault if he or she:
>
>> (1) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
>> (2) negligently causes bodily injury to another with a deadly weapon; or
>> (3) attempts by physical menace to put another in fear of imminent serious bodily injury.
>
> (b) A person who is convicted of simple assault shall be imprisoned for not more than one year or fined not more than $1,000.00, or both, unless the offense is committed in a fight or scuffle entered into by mutual consent, in which case a person convicted of simple assault shall be imprisoned not more than 60 days or fined not more than $500.00 or both.

13 V.S.A. § 1023.

### 1) Does Section 1023(b) Create a Separate and Distinct Offense

The Defendant argues that Section 1023(b) "creates a separate and distinct offense known as a 'Mutual Affray.'"[3] Def.'s Mot. to Dismiss 5. He argues that section 1023(b) incorporates the common law offense of "affray," and he deduces that because the public is the victim of the common law offense of "mutual affray," and because a misdemeanor crime of domestic violence must have an individual

---

[3] The amendment made to the charging instrument and docket entries both use the term "Mutual Affray." Exh. 1 to Def.'s Mot. to Dismiss 1 & 4.

5

victim, a Section 1023(b) offense cannot serve as a predicate offense for purposes of Section 922(g)(9).

The Defendant cites a Vermont case which sets forth the general rule that "the common law is changed by statute only if the statute overturns the common law in clear and unambiguous language." *Langle v. Kurkul*, 510 A.2d 1301, 1303 (Vt. 1986). But the Defendant offers no Vermont authority which establishes the elements of the common law offense of "affray" or concludes that the public is the only victim of an affray. The Court's research uncovered *State v. Clary*, 78 A. 717 (Vt. 1911), which suggests that the concept of the public as victim in the "affray" context is relevant where a peacemaker attempts to intervene.[4] Since the term "affray" has a long and colorful history at common law, the fact that it does not appear in the statute strongly suggests that the Vermont legislature did *not* incorporate the common law "affray" into Section 1023(b), but was rather merely limiting the penalties for fights entered into by mutual consent.

---

[4] In *Clary,* the Vermont Supreme Court stated:

It would be difficult to distinguish this affair as disclosed by the record from the common–law affray which was defined to be the fighting of two or more persons in a public place to the terror of the king's subjects, and which Blackstone said might "be suppressed by any private person present, who is justifiable in endeavoring to part the combatants, whatever consequences may ensue." 4 Black. (15th Ed.) 145.

In such cases, the peacemaker's justification does not in any degree depend upon which of the contestants was guilty of the first illegal violence, for he justifies, not in the right of either of the parties, but in the right of the public. And, as said by Baron Parke in the Timothy Case, "if no one could be restrained of his liberty, in cases of mutual conflict, except the party who did the first wrong, and the bystander acted at his peril in this respect, there would be very little chance of the public peace being preserved by the interference of private individuals."

78 A. at 718.

A straightforward reading of Section 1023(b) suggests that the "mutual consent" variant is a type of simple assault. "A person who is convicted of *simple assault* shall be imprisoned for not more than one year or fined not more than $1,000.00, or both, unless *the offense* is committed in a fight or scuffle entered into by mutual consent . . . ." 13 V.S.A. § 1023(b) (emphasis added.) Rather than serving as a stand-alone offense, Section 1023(b) merely "limits the penalties for simple assault when committed in a fight or scuffle entered into by mutual consent." *State v. Darling*, 449 A.2d 928, 930 (Vt. 1982).[5]

Model Jury Instructions published by the Vermont Bar Association are in accordance with the concept that the "mutual consent" variant incorporates the elements of simple assault. The instruction for Simple Assault by Mutual Consent – 13 V.S.A. § 1023(b) begins: "With regard to your verdict in this matter: If you find [the defendant] guilty of simple assault, there will be one further matter for you to consider. The law requires you to decide whether this offense was the result of mutual consent."[6]

Accordingly, the Court declines to adopt the Defendant's interpretation of 1023(b) as a separate and distinct offense incorporating the elements of the common

---

[5] The Defendant asserts that *In re Andres*, 749 A.2d 618, 621 (Vt. 2000), supports the proposition that "a simple assault by mutual affray is a lessor included offense of simple assault,"— *i.e.* an offense that by definition does not require all of the elements of a simple assault. Def's Reply in Support of Mot. to Dismiss 5 (ECF No. 35). But *In re Andres* merely recounted that an attorney who was being publicly reprimanded after engaging in a fist fight with a former client outside a bar, had, among other breaches of the professional code of ethics, been charged with simple assault, but "pled guilty to the lesser offense of simple assault by mutual affray." *In re Andres*, 749 A.2d at 621. This historical recounting does not address the question of whether a mutual affray is a "lesser included offense" of simple assault.

[6] Posted on July 15, 2003 and available at http://vtjuryinstructions.org/criminal/MS22-046. These instructions were developed by the Vermont Criminal Jury Instruction Committee and are sponsored by the Vermont Bar Association.

7

law mutual affray, but concludes instead that the Defendant was convicted of a simple assault of the mutual consent variety.

**2) Does Section 1023(a) Qualify as a Misdemeanor Crime of Domestic Violence?**

Vermont criminalizes three types of Simple Assault.

(a) A person is guilty of simple assault if he or she:

(1) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
(2) negligently causes bodily injury to another with a deadly weapon; or
(3) attempts by physical menace to put another in fear of imminent serious bodily injury.

13 V.S.A. § 1023. The Defendant argues that none of the three variants found in Section 1023(a) qualifies as a misdemeanor crime of domestic violence under federal law. The Government contends that only the Section 1023(a)(1) variant is relevant since it formed the basis of the Defendant's conviction, and that Section 1023(a)(1) qualifies as a misdemeanor crime of domestic violence.

The parties dispute whether the Court can turn to the transcript of the Defendant's state court plea colloquy to determine the crime of conviction. The Defendant argues that since the Defendant was convicted under 1023(b), there is no need to turn to the plea colloquy. The Court, however, has rejected the Defendant's argument that 1023(b) sets forth a separate and distinct offense. The Government points out that under *Shepard v. United States,* 544 U.S. 13, 20 (2005), courts may review the transcript of the defendant's plea colloquy to determine which portion of a divisible statute was applicable to the Defendant's conviction. It is clear from the

transcript of the Defendant's change of plea hearing that he was charged with and admitted to engaging in a physical altercation in which he recklessly caused his girlfriend bodily injury. Accordingly, the Defendant was convicted of simple assault of the 1023(a)(1) variety and the penalties were reduced because of the application of the mutual consent provisions of 1023(b).

Because the Defendant was convicted of the 1023(a)(1) form of simple assault, the Court limits its analysis to whether the crime set forth in 1023(a)(1) qualifies as a misdemeanor crime of domestic violence under federal law. The First Circuit in *Nason* decided that the Maine assault statute, which has language similar to Section 1023(a)(1), *does* meet the definition of a misdemeanor crime of domestic violence. *Nason,* 269 F.3d at 18 (interpreting "intentionally, knowingly or recklessly causes bodily injury or offensive physical contact" found in 17-A M.R.S.A. §207(1)). In *Nason,* the First Circuit observed that, even though federal law defined "misdemeanor crime of domestic violence" from the perspective of the assailant's conduct—i.e. that the assailant use "physical force"—and Maine's statute focused on the victim's circumstances—i.e. that the victim endure either bodily injury or offensive physical contact— the federal and state statutes were reconcilable. *Nason*, 269 F.3d at 19-20. The First Circuit concluded that "both bodily injury and offensive physical contact assaults necessarily involve the use of physical force." *Nason*, 269 F.3d at 20. The *Nason* court noted that Maine's Supreme Judicial Court has interpreted the "bodily injury" prong of its assault statute as requiring "the 'use of unlawful force against another causing bodily injury.'" *Id.* (quoting *State v. Griffin,*

459 A.2d 1086, 1091 (Me. 1983)). The First Circuit had no difficulty concluding that "to cause physical injury,[7] force necessarily must be physical in nature." *Id.*

Vermont's Supreme Court has not made a similarly definitive pronouncement, but Vermont's model criminal jury instructions[8] provide that "[a]n attempt [to cause bodily injury to the victim under 13 V.S.A. § 1023(a)(1)] requires an open physical act by [the Defendant] . . . ." If the threat to cause bodily injury must be physical to be assaultive, it stands to reason that any bodily injury actually caused must also be by physical means. These instructions are not binding on Vermont's Supreme Court, but in the absence of any contrary authority, the Court finds that Vermont's Supreme Court would find that the "bodily injury" contemplated under its simple assault statute requires the use of unlawful force against another. Under these circumstances, *Nason* instructs that Vermont's simple assault statute variant found at 1023(a)(1) qualifies as a misdemeanor crime of domestic violence. *Nason*, 269 F.3d at 20.

The Defendant also contends that, because the Defendant's predicate offense occurred in Vermont, which is part of the Second Circuit, this Court should apply the law of that circuit rather than the law of the First Circuit in determining whether the offense meets the definition of a misdemeanor crime of domestic violence under federal law. The Defendant does not point to any basis in the law, nor does the Court discern any, that would allow it to set aside First Circuit

---

[7] Vermont defines "bodily injury" almost identically to Maine, as "physical pain, illness or any impairment of physical condition." 13 V.S.A. § 1021(1); *see also* 17-A M.R.S.A. §2(5).

[8] Posted on March 3, 2007 and available at http://vtjuryinstructions.org/?page_id=698. These instructions were developed by the Vermont Criminal Jury Instruction Committee and are sponsored by the Vermont Bar Association.

precedent. *See, e.g., Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) ("District courts are, of course, bound by the law of their own circuit . . .").

While the Court is bound by Vermont's interpretations of its statutes, the question of whether Vermont's simple assault statute meets the federal definition of a misdemeanor crime of domestic violence is a question of federal law. *See Johnson*, 559 U.S. at 138. This question of federal law was brought before the Court following the Defendant's indictment in the District of Maine for possession of a firearm by an individual convicted of a misdemeanor crime of domestic violence. The Court is bound in its consideration of the case to follow federal law as interpreted by the First Circuit.

Accordingly, the Court concludes that the Defendant's conviction for simple assault in Vermont under 1023(a)(1) and 1023(b) constitutes a misdemeanor crime of domestic violence as defined by Section 921(a)(33)(A).

### C. Lenity / Constitutional Doubt

The Defendant asserts that "the capability of 13 V.S.A. § 1023(b) to produce a § 922(g)(9) predicate is an intractably ambiguous question, and, consequently, must be given the interpretation most lenient to the defendant." Def's Reply in Support of Mot. to Dismiss 5-6. This argument is based on two arguments: (1) that Vermont's Supreme Judicial Court has not interpreted Section 1023(b) as consistent with a Section 922(g)(9) predicate offense, and (2) that the Second Circuit has not passed on this question either. The Court does not perceive any ambiguity either in Vermont's simple assault statute, or in its duty to apply the law of the First Circuit

to the Defendant's case, nor does it perceive any ambiguity in the sufficiency of the Defendant's conviction to serve as a predicate offense under First Circuit precedent. *See Booker*, 644 F.3d at 21. ("[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." (quoting *Barber v. Thomas*, 130 S. Ct. 2499, 2508-09 (2010) (alteration in original)). The doctrine of constitutional doubt also "has no application in the present case." *Booker*, 644 F.3d at 22.

### D. Second and Fifth Amendments

The Defendant claims that his right to due process of law under the Fifth Amendment to the United States Constitution has been infringed because he lacked notice that he was subject to a perpetual firearms ban for having been convicted of a "simple assault—mutual affray" under Section § 1023(b). He also asserts that Section 922(g)(9), as it has been applied to him in this case, unconstitutionally infringes on his right under the Second Amendment to the United States Constitution to bear arms. Both of these claims require the Court to accept the premise that the crime of which the Defendant was convicted was "a petty offense against the public order," Def's Mot. to Dismiss 10-11, rather than an offense that meets the definition of a misdemeanor crime of domestic violence. For this reason, both claims fail.

The individual constitutional right to bear arms recognized in *District of Columbia v. Heller* is "the right of law-abiding, responsible citizens to use arms in

defense of hearth and home." 554 U.S. 570, 635 (2008). The First Circuit has already found, and reaffirmed, that Section "922(g)(9) 'substantially promotes an important government interest in preventing domestic gun violence." *Armstrong*, 706 F.3d at 7 (quoting *Booker*, 644 F.3d at 22). Specifically, "'[s]tatistics bear out the Supreme Court's observation that 'firearms and domestic strife are a potentially deadly combination nationwide.'" *Id.* (quoting *United States v. Hayes*, 555 U.S. 415, 427 (2009)). Thus, Section 922(g)(9) does not, on its face, infringe the right of law-abiding, responsible citizens to bear arms.

The Court agrees that the Defendant's actions at the time of his arrest for possession of a firearm are not relevant to the question of whether Section 922(g)(9) is unconstitutional as applied to him, *see United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011), but struggles to see what the Defendant's as-applied challenge adds to the overall Second Amendment analysis. The Defendant's plea colloquy establishes that the basis for the Defendant's "simple assault mutual affray" conviction was the Defendant's infliction of bodily injury upon his live-in girlfriend, satisfying both the physical force and domestic relation requirements of a misdemeanor crime of domestic violence.

The Defendant's claim that this is categorically indistinguishable from a case in which "domestic partners join the affray together against a common foe," does not reflect the requirement that the victim must be someone with whom the perpetrator has a domestic relationship. *See* 18 U.S.C. 921(a)(33)(A). The victim in the Defendant's hypothetical is a third party, not the live-in girlfriend, and thus the

13

hypothetical would not constitute a predicate offense. Because Section 922(g)(9) cannot apply to any "mutual affray" conviction unless the victim is in a domestic relation to the perpetrator, this statute as applied to Vermont's "simple assault—mutual affray" crime substantially promotes the important governmental interest of preventing the combination of guns and domestic violence.

Likewise, the Defendant's Fifth Amendment due process claim fails because the Defendant acknowledged at his plea colloquy that his simple assault-mutual affray conviction was based on his reckless infliction of bodily injury upon his live-in girlfriend. As the First Circuit noted in *United States v. Denis*:

> [W]hatever the precise wording of the criminal complaint against him, Denis knew that he was convicted of a misdemeanor offense after assaulting his live-in girlfriend. That is enough to "remove[ ] him[ ] from the class of ordinary and innocent citizens who would expect no special restrictions on the possession of a firearm."

*United States v. Denis,* 297 F.3d 25, 31 (1st Cir. 2002) (quoting *United States v. Beavers*, 206 F.3d 706, 710 (6th Cir. 2000) (alterations in original)).

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the indictment against him is **DENIED**.

SO ORDERED.

                                        /s/ Nancy Torresen
                                        United States District Judge

Dated this 9th day of January, 2014.